UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA AVALOS O/B/O MANUEL AVALOS (DECEASED),<br><br>    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. ED CV 14-484-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her deceased husband's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he found that her husband was not credible, rejected the opinion of an examining doctor, and failed to include all of the claimant's functional limitations in the residual functional capacity determination. For the reasons explained below, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

II.

SUMMARY OF PROCEEDINGS

On December 28, 2010, decedent Manuel Avalos Rodriguez (hereinafter "the claimant") applied for DIB and SSI, alleging that he had been unable to work since December 12, 2009, due to congestive heart failure, diabetes mellitus, hypertension, low back strain, and pancreatitis. (Administrative Record ("AR") 66-71, 156-167, 184-90.) After his applications were denied initially and on reconsideration, he requested and was granted a hearing before an ALJ. (AR 79-84, 87-91.) On May 22, 2012, he appeared with counsel and testified at the hearing. (AR 61-74). A medical expert who also testified at the hearing noted that the claimant had not been examined by an orthopedist or an internist and recommended that this be done. (AR 71-73.) The ALJ agreed and suspended the hearing so that the claimant could undergo those examinations, which he did. On December 6, 2012, the claimant appeared with counsel and testified at a second hearing. (AR 49-60.) On December 18, 2012, the ALJ issued a decision denying the applications. (AR 10-18.) The claimant appealed to the Appeals Council, which denied review. (AR 1-6.) This action followed.

III.

DISCUSSION

A.  <u>The ALJ's Credibility Determination</u>

Plaintiff contends that the ALJ failed to provide adequate reasons for rejecting the claimant's testimony. (Joint Stip. at 3-7.) For the following reasons, the Court agrees.

ALJs are tasked with judging the credibility of witnesses, including the claimants. In making these credibility determinations, they may employ ordinary credibility evaluation techniques. *Smolen v.*

*Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). But, where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject a claimant's testimony for specific, clear, and convincing reasons, *id.* at 1283-84, that are supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The claimant testified that his heart condition and his back pain prevented him from working. (AR 52-54, 66-71.) The ALJ rejected this testimony because he found that it was undermined by the fact that the claimant's treatment had been routine and conservative, consisting of medication.[1] (AR 16.)

The fact that a claimant's treatment is routine and conservative is a factor that an ALJ may consider in evaluating credibility. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); and *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The record on this issue, however, is somewhat mixed. As to the claimant's heart condition, the treatment was not always routine and conservative. In 2009, he underwent emergency heart surgery and had a stent inserted. (AR 241-42, 251-53.) The Court would not characterize this as routine or conservative.

Following the surgery, it seems that the claimant's treatment consisted of testing and medication. (AR 383-448, 471-509.) At the time of the consultative examinations in June 2012, the claimant was

---

[1] The Court has focused on the claimant's heart condition and his back pain because it does not appear that he contended that his other ailments, including diabetes and pancreatitis, prevented him from working. (AR 53.)

taking four medications for his heart and blood pressure, i.e., hydrochlorothiazide, carvedilol, Nifediac, and furosemide. (AR 456, 460.)

It is hard for the Court to judge on this record whether the claimant's treatment for his heart condition was routine and conservative. Certainly the surgery was not. But it is less clear whether the treatment following the surgery was. None of the doctors suggested that it was. Nor did any propose a more aggressive treatment. Though, as the medical expert pointed out, the claimant had been told twice to obtain a nuclear stress test and there is no indication that he did (AR 71-72), the Court assumes that this testing was intended to be diagnostic and would not have altered the treatment regimen. Absent some indication from a doctor that this treatment was conservative, the Court cannot conclude that it was. As such, this reason for discounting the claimant's testimony is rejected.[2]

The Court would agree that the claimant's treatment for his allegedly disabling back pain was conservative. In fact, it was almost nonexistent. The claimant sometimes used a cane to get around but, as he admitted at the hearing, it was not prescribed to him. (AR 53.) And though there were times when he complained about back pain to his doctors and took medication to relieve the pain, the record does not establish that he received any treatment beyond the medication, despite his claims to the contrary. (AR 455, 487-509.)

---

[2] The Court is not holding that, in every case, an ALJ has to point to a doctor's opinion that the treatment a claimant received was routine and conservative and a more proactive treatment was indicated. It is simply holding that, in this case, because there is no suggestion that the treatment was wanting and because treatment for this condition is not obvious to a lay person, the ALJ's finding that the treatment was routine and conservative is overruled.

In fact, he conceded to the consultative examiner that he was not being treated for his back pain in June 2012, and explained that the reason he was not was because he was waiting until after he addressed his diabetes and high blood pressure. (AR 460.) And, though he claimed that he had so severely injured his knee four months before the second administrative hearing that he was "unable to do anything," there are no records showing he ever sought any treatment for it. It makes no sense that the claimant would be suffering from so much pain as a result of the injury that he was "unable to do anything" and he would not seek treatment to address it. As such, the Court concurs with the ALJ's finding that the claimant's failure to pursue more aggressive treatment for his back (and knee) undermines his claim that his pain precluded him from working.

   The second reason the ALJ offered for questioning the claimant's testimony was that his medications were effective in controlling his conditions. (AR 16.) This is a legitimate reason for concluding that a claimant's condition is not disabling, *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding "impairments that can be controlled effectively with medication are not disabling"), and it is supported by the record. The record demonstrates that the claimant's diabetes and his heart condition were controlled with medication. (AR 53, 55-56.) Though it less clear as to the claimant's back pain, there is enough evidence in the record to support the ALJ's finding in this regard, too. For example, the examining orthopedist concluded that, despite his condition and the pain it allegedly caused him, the claimant was practically unrestricted in his ability to push, pull, lift, and carry. (AR 458-59.)

The ALJ rejected the claimant's testimony that he was only able to perform limited daily activities because he found that the testimony was not objectively verified, was not supported by the "weak" medical evidence, and was outweighed by "other factors discussed in this decision." (AR 16.) These are not valid reasons for questioning a claimant's credibility.

First, there is no requirement that a claimant provide objective verification for his testimony. Though claimants sometimes submit testimonials from family members and friends who have observed them and can report on what they have seen, there is no requirement that they do so. And, though the medical evidence often provides some objective support for claimed limitations, that is not always the case nor is it a requirement for the testimony to be accepted.

As to the ALJ's consideration of the "weak" medical evidence and the "other factors" discussed in his nine-page decision, these reasons are not specific enough for the Court to decipher and/or uphold them. *See, e.g., Treichler v. Comm'r of Soc. Security*, 775 F.3d 1090, 1102-03 (9th Cir. 2014) (explaining ALJ required to identify testimony that is not credible and specify what undermines it).

In the end, the Court finds that two of the reasons proffered by the ALJ for discounting Plaintiff's testimony are valid and the rest are not. The Court concludes that these two reasons are not enough to uphold the ALJ's credibility finding in the context of this case. As such, the credibility issue is remanded for further consideration. *See Connett v.* Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

B.   The Examining Internist's Opinion

Plaintiff contends that the ALJ erred in rejecting the opinion of the examining internist, Dr. Robin Alleyne, who had essentially concluded that the claimant was capable of performing only sedentary work, and accepting, instead, the opinion of the medical expert, who believed he could do more. For the following reasons, the ALJ's finding is affirmed.

It is the province of the ALJ to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors supply that evidence: treating doctors, examining doctors, and reviewing doctors. All other things being equal, treating doctors' opinions are entitled to the greatest weight because they are hired to cure and have more opportunity to know and observe the patient. *Id.* at 1041; *see also* 20 C.F.R. 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations"). Examining doctors are next on the list, followed by reviewing doctors. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). ALJs, however, are not required to merely accept the opinion of any doctor and, where the opinion is contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* at 830.

The ALJ found that examining internist Alleyne's opinion that the claimant was limited to sedentary work was not supported by the

medical record as a whole, including the unremarkable physical examinations and the mild x-ray findings that the ALJ had previously discussed in his decision. (AR 17.) He chose to rely, instead, on the medical expert's opinion because it was consistent with the record as a whole and because that doctor had reviewed all of the medical evidence and was familiar with the regulations governing social security cases.

The claimant's medical examinations, other than Dr. Alleyne's, were relatively unremarkable. Examining orthopedist Bernabe found the claimant in no distress and able to move about the office freely and without assistance. (AR 456.) In fact, other than a limitation on range of motion in his back, Dr. Bernabe found that the claimant had no limitations and was capable of performing what amounted to medium work. (AR 449-54.) The treating doctors, too, did not report anything particularly remarkable as a result of their examinations. (AR 335-71, 383-448, 480-507.)

The x-rays also support the ALJ's finding that Dr. Alleyne's opinion was questionable. Dr. Bernabe ordered x-rays of the claimant's spine in connection with his consultative examination and found that they were completely unremarkable except for a mild narrowing of the disc space at L5-S1. (AR 458.) Dr. Alleyne did not obtain and/or review any x-rays. (AR 460-64.)

As to the ALJ's reliance on the fact that the medical expert's opinion was consistent with the record as a whole, that is not specific enough. The ALJ was required to point out what evidence in the record he was referring to. The Court also rejects his reliance on the fact that the medical expert understood the regulations as the

ALJ failed to explain how such an understanding bolstered the doctor's medical opinion.

Ultimately, however, the Court finds that the ALJ's other reasons for rejecting Dr. Alleyne's opinion and accepting the medical expert's opinion are valid. As the ALJ noted, the medical expert had reviewed the entire medical record in this case. (AR 16.) Dr. Alleyne had not reviewed any records. (AR 463.) Nor had he reviewed any x-rays. (AR 460-64.) He simply examined the claimant, performed some testing (that was presumably limited due to the claimant's complaints of extreme pain), and recorded the history that the claimant provided. Though, normally, this might be enough, it was not enough here because the examining doctor's opinions were divergent and thus it was necessary to resort to the medical record to resolve the differences in opinion. For example, the claimant was examined by Dr. Alleyne on June 19, 2012. (AR 460.) According to Dr. Alleyne, he was in so much pain that "[a]ny slight movement cause[d] him to cry." (AR 461.) The claimant was unable to walk heel-to-toe on that day. (AR 461.) Interestingly, he had been examined by Dr. Bernabe just six days earlier and he was not in any pain. (AR 455-59.) In fact, according to Dr. Bernabe: "The claimant moved freely in and out of the office and around the examination room without the use of any assistive device." (AR 456.) He was also able to walk heel-to-toe. (AR 456.) As a result of his examination, Dr. Bernabe found that the claimant had no restrictions on his movement at all. (AR 459.)

The ALJ was tasked with resolving the contradictory medical opinions in this case and he did. The Court cannot say that he erred in doing so. For that reason, his decision will be upheld.

### C. The Residual Functional Capacity Determination

Finally, Plaintiff complains that the ALJ failed to include Dr. Alleyne's findings in the residual functional capacity assessment and in the hypothetical question to the vocational expert. Because the ALJ had good reason to reject Dr. Alleyne's opinion, he was not required to include Dr. Alleyne's limitations in the hypothetical question to the ALJ. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). For this reason, Plaintiff's objection is overruled. The ALJ may, however, reconsider the residual functional capacity finding as well as any other findings, including his findings regarding the medical evidence, in the course of resolving the credibility issue on remand.

## IV.

## CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.[3]

IT IS SO ORDERED.

DATED: February 25, 2015

*[signature: Patrick J. Walsh]*

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\AVALOS, 484\Memorandum Opinion and Order.wpd

---

[3] To the extent that Plaintiff is requesting that the Court order the Agency to award benefits on remand, that request is denied. There are obviously numerous issues that must be resolved before it can be determined whether the claimant qualified for disability. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (noting district court is only required to remand for benefits when record has been fully developed, further proceedings would serve no purpose, and ALJ would be required to find claimant disabled on remand).